Bergan, J.
In January, 1938, now almost 30 years ago, a police sergeant interrupting a robbery in progress at a pawnshop •in the Bronx was shot dead and a patrolman accompanying him was seriously wounded.
Defendant De Renzzio, running out of the pawnshop, was immediately captured by a policeman at gunpoint. He was convicted of murder, first degree, but the jury recommending life imprisonment, he escaped capital punishment.
Defendant made several statements. Two were given to the police before indictment; one was given to the District Attorney before and one after indictment. Defendant was accorded a skillful and energetic defense by assigned counsel. Every strategic advantage open at the trial was taken by defendant’s lawyer; and although the defendant had been captured at the scene of the crime and a police sergeant had there been murdered, the jury recommended the lesser of two available punishments. The District Attorney had strongly urged to the jury that it impose the death penalty. Beading the record makes it very clear that lawyer-skill had saved defendant from capital punishment.
This background of a case tried long ago, but now here on appeal, is helpful to place in perspective the main constitutional question raised by appellant: that it was a deprivation of defendant’s right to counsel to take a statement from him after indictment.
Defendant did not object on the trial to the reception of that statement. On the contrary, it was used affirmatively by defend *49 ant’s counsel in argument to the jury to suggest that defendant had taken a less significant part in the crime than his companions. It was so used in lieu of any trial explanation by the defendant himself who chose not to be a witness.
The appeal is here now because, the original appeal to the Appellate Division having been dismissed in 1938 for lack of prosecution in accordance with the then prevailing practice, the denial of a much later motion to reinstate it was reversed here in 1964 (14 N Y 2d 732). The appeal was heard in 1966 at the Appellate Division and the judgment of conviction affirmed on a carefully reasoned opinion (25 A D 2d 652).
Almost a quarter of a century after the trial of the present case this court in 1960 announced a rule of law that a statement taken of an accused after indictment and without the presence of counsel was in violation of the constitutional right to counsel and thus inadmissible (People v. Di Biasi, 7 N Y 2d 544). This was followed and implemented in 1961 by People v. Waterman (9 N Y 2d 561). No such rule had been announced in 1938; and the understanding of the Bar on this point of law was quite the other way.
In basic conceptional theory the pronouncement of the common-law court is deemed retroactively to have been the rule of the past. A decision states the law as it ought rightly to have been understood from the beginning. But this is one of the fictions by which the common law lived; and nowhere is it more manifestly a fiction than in the area of constitutional interpretation.
The fact is that there was a different judicial reading of the Constitution in 1938 and in 1960 on the admissibility of a post-indictment statement. There seems no compelling policy reason why, because of a general theory of retroactivity of judicial pronouncement we must, or should, impose a subsequently developed theory of law upon a trial competently managed nearly 30 years ago.
We have no valid basis for assuming our predecessors were so entirely wrong and we quite so entirely right about our views that we should undo what was correctly done many years ago according to the general understanding of lawyers on how the Constitution should be read.
*50 The decisions in People v. Di Biasi (supra) and People v. Waterman (supra) relating to admissibility of postindictment admissions were each based on appropriate objection on the trial to the reception of the admissions.
We ought not devise an objection many years from the time of trial which skillful counsel did not choose to make; or to decide in a review of this kind of a case that an objection is not required and the question is saved for review. This would run against the deeply imbedded policy that an objection is necessary to raise a law question on an appeal.
To set aside such a conviction upon the basis of a changed view of the Judges on what is a constitutional privilege, and although no objection was made by Skilled counsel at the trial, would discredit the stability of any ordered legal system. Such a result would do little to enhance confidence in the stability of New York law.
Although in People v. McLucas (15 N Y 2d 167, 172) it was held that an exception is unnecessary to ‘ ‘ review a deprivation of a fundamental constitutional right ”, this case seems to run directly against the then recently decided case of People v. Friola (11 N Y 2d 157) which held explicitly that objection is necessary to preserve for appellate review an issue of constitutional law. This had been consistently held in many New York cases and its principle was reaffirmed in the later case of People v. Howard (12 NY 2d 65).
But the McLucas rule ought not be applied to the present case. Here there was not only no objection to the reception of the post-indictment statement, but the statement itself was employed in strategical utilization by defendant’s counsel at the trial.
This statement was, in effect, contrasted in summation with the earlier statement made by defendant as indicating to the jury a lesser degree of culpability. Portions of the statement taken by the District Attorney were read literally to the jury by defense counsel, including exculpatory explanations which were employed to serve the place of his taking the stand. This was skillfully developed in the argument to the jury.
In looking at this aspect of the ease we approach, indeed, the vital center of the adversary system. The Constitution in guaranteeing the accused in a criminal case the “ Assistance of Counsel for his defence ” deals neither with a shadowy figure *51 standing beside the accused nor with an abstract idea. It envisages a lawyer, skilled in advocacy, a match for the prosecutor, and in full control of the management of the defense at the trial.
If such a lawyer chooses not to raise a point of constitutional law in a professionally competent defense, either because he believes he could use material affirmatively to advantage or because he believes it better for his client not to raise it, we would work fundamental changes in the adversary system if we determine he should have done that which he had decided advisedly not to do.
The Supreme Court has held in Massiah v. United States (377 U. S. 201) that an electronic recording of defendant’s conversations made by Federal agents after indictment deprived the accused of right to counsel, and it has held that a failure to object in a State court to proceedings which violate Federal constitutional rights does not effect a waiver (McLeod v. Ohio, 378 U. S. 582, 381 U. S. 356; O’Connor v. Ohio, 385 U. S. 92).
But these cases touch merely upon the negative side of absence of objection. We have here not merely a failure to raise the constitutional point now argued, but a decision not to raise it seems to have been reached as a strategic choice at the trial.
The judgment should be affirmed.