**UNITED STATES of America ex rel. Charles TERRY, Petitioner-Appellant,**

v.

**Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Auburn, New York, Respondent-Appellee.**

**No. 707, Docket 72–1032.**

United States Court of Appeals, Second Circuit.

Argued May 1, 1972.

Decided June 13, 1972.

---

Michael A. Young, The Legal Aid Society, New York City (Robert Kasanof, New York City, on the brief), for petitioner-appellant.

John G. Proudfit, Asst. Atty. Gen. of State of New York, New York City (Louis J. Lefkowitz, Atty. Gen. of State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen. of State of New York, and Iris A. Steel, Asst. Atty. Gen. of State of New York, New York City, on the brief), for respondent-appellee.

Before KAUFMAN, MANSFIELD and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

The primary issue raised on this appeal from the denial of a state prisoner's petition for a writ of habeas corpus is whether the district court should have held a hearing on the issue of the voluntariness of petitioner's confession of nine years ago, although counsel at his state murder trial not only failed to object to the confession on grounds of involuntariness but made affirmative use of it to negate lack of intent to kill, leading to his acquittal of premeditated murder. A secondary issue raised is whether petitioner's conviction of felony murder denied him due process because of alleged insufficient evidence to support the predicate felony of robbery, although there was sufficient evidence of

attempted grand larceny. Finding no error in the district court's denial of the petition without a hearing, we affirm.

Charles Terry, presently incarcerated at Auburn Correctional Facility, Auburn, New York, was convicted at the first phase of his trial on November 1, 1963 in the New York Supreme Court, New York County, after an 11 day jury trial before Justice Thomas Dickens, of felony murder which was the equivalent of first degree murder under New York law. After a further 2 day jury trial of the second phase, the purpose of which was to determine whether he should be punished by death or life imprisonment, the jury on November 8, 1963 unanimously determined that the death penalty should be imposed. On December 5, 1963, he was sentenced to death. The Governor subsequently commuted his sentence to life imprisonment.[1] On July 9, 1965, the New York Court of Appeals on direct appeal unanimously affirmed the judgment of conviction. People v. Terry, 16 N.Y.2d 731, 209 N.E.2d 727, 262 N.Y.S.2d 111 (1965). After exhausting his state remedies,[2] petitioner on June 10, 1971 filed his third petition for a writ of habeas corpus[3] in the Southern District of New York, from the denial of which on October 28, 1971 without a hearing by Sylvester J. Ryan, District Judge, the instant appeal has been taken.[4]

### I.

In the early morning hours of May 30, 1963, Terry strangled to death Mrs. Zenovia Clegg in her room at the Hotel Woodstock located in mid-town Manhattan.

Mrs. Clegg was a chance acquaintance whom Terry had met for the first time on the street, at the corner of Sixth Avenue and 43rd Street, on May 29 at about 10 P.M. She was small and old. She limped and used a cane. She approached Terry and asked that he show her the way to her hotel. He agreed. En route they stopped at various places for drinks. At about 1:30 A.M. on May 30, they left the bar in the lobby of the hotel Woodstock, took the elevator, rode to the eleventh floor, and entered Mrs. Clegg's room.

In her room they had some more drinks. While they were sitting on her bed, Mrs. Clegg asked Terry if he would like to have some sex with her. He

---

1. Pursuant to a general policy announced by the Governor on June 5, 1965 after the New York Legislature amended the New York capital punishment statute so as to eliminate capital punishment in all except two classifications not here applicable. N.Y.Penal Law § 125.30 (McKinney 1967) (former § 1045).

2. Terry's first coram nobis petition was denied by Justice Dickens in the New York Supreme Court, New York County, on November 23, 1966, from which he did not appeal.

His second coram nobis petition was denied by Justice Dickens in the New York Supreme Court, New York County, on April 27, 1967. The Appellate Division affirmed without opinion on December 10, 1968. 31 App.Div.2d 613 (1st Dept.1968). The New York Court of Appeals affirmed with an opinion on April 9, 1970. 26 N.Y.2d 265, 258 N.E.2d 194, 309 N.Y.S.2d 901 (1970).

Petitioner has exhausted his state remedies with respect to the issues raised on the instant appeal.

3. Terry's first habeas corpus petition in the Southern District of New York was denied by Judge Weinfeld on May 18, 1966, without prejudice to renewal after his state remedies had been exhausted. Terry v. Denno, 254 F.Supp. 909 (S.D.N.Y. 1966).

His second habeas corpus petition was denied by Judge Cooper on February 1, 1967 because of his failure to appeal from the denial by Justice Dickens on November 23, 1966 of his first coram nobis petition. *Supra* note 2.

Following the affirmance by the Appellate Division and the New York Court of Appeals of the denial by Justice Dickens on April 27, 1967 of his second coram nobis petition, *supra* note 2, his third habeas corpus petition was filed.

4. On December 13, 1971, Judge Ryan granted petitioner's motion for a certificate of probable cause and for leave to appeal in forma pauperis. On January 31, 1972, our Court granted petitioner's motion for assignment of counsel on appeal.

agreed. But he was unable physically to perform as a man is expected to in such a situation. In Terry's words, this is what happened:

"She started calling me a little boy and saying, 'What's the matter? Can't you get a hard-on? Are you still a little child or somethin? . . . What's the matter? What does it take, a fairy, to give you a hard-on?' I blew my top, slugged her a few times, choked her with my arm."

Terry told the police that he pressed his forearm on her throat and held it there for five minutes, until she stopped breathing. Specifically, when asked by the police officer, "Well, when you say she stopped breathing, what do you mean, —do you mean she was dead?", Terry replied, "Yes, she was dead." [5]

Terry thereupon passed out. Upon regaining consciousness, he helped himself to various items of the deceased's personal property,[6] walked down the eleven flight stairway and departed from the Hotel Woodstock as dawn was breaking.

Three days later, on June 2, a chambermaid found the deceased lying on her bed and not breathing.[7] Hotel employees, the police and a medical examiner were summoned. The medical examiner pronounced her dead; and on the following day, June 3, following an autopsy, he determined that she had been dead for a period of 2 to 5 days and that the cause of death was strangulation.

On June 5 at about 11:30 P.M., Terry was picked up at a Greenwich Village bar by a police officer who, accompanied by several other police officers, took him to the station house. While the parties to the instant appeal differ as to the events that followed, including the time periods involved,[8] there emerged a confession by Terry, first given orally to Detective LoCurto and later reduced to a written, unsigned statement given to Assistant District Attorney Fogerty and recorded by a stenographer on a stenotype machine tape which was received in evidence. This statement was fully transcribed and was read to the jury at Terry's trial.

## II.

Terry's primary contention on this appeal is that the district court erred in denying him a hearing on the voluntariness of his confession. We disagree.

██ Our careful examination of the 1249 page record of Terry's state murder trial leaves us with a firm conviction that Judge Ryan correctly held that there was a deliberate bypass of the state procedure for questioning the voluntariness of the confession. Accordingly, an evidentiary hearing in the district court as to whether there was a deliberate bypass was not required and Terry was properly barred from questioning the voluntariness of his confession in the instant federal habeas corpus proceeding. Henry v. Mississippi, 379

---

5. In his brief on the instant appeal, Terry states that he assumes "for purposes of this appeal . . . that this assault was fatal."

6. Among the items of personal property taken by Terry was a diamond pin appraised at $1,000; a pendant appraised at $300; a gold cigarette case; $30 or $40 in cash; and three travelers checks, each in amount of $100, bearing the name of Zenovia Clegg on the face side and endorsed to "John C. Farrell", an endorsement Terry admitted having written himself.

7. Actually, the deceased had been observed lying in her bed in the same position by the chambermaid or a substitute chambermaid on each of the preceding three days, but they did not realize she was dead.

8. While Terry testified at trial that he was questioned for about 4 hours, the record shows that he was arrested at the station house at about 12 midnight; he was questioned by several police officers for a half hour; at his request, all of the police officers except Detective LoCurto left at 12:30; he completed his oral confession to LoCurto between 1:45 and 2:00; the Assistant District Attorney and a stenographer having been called by telephone, began taking his written statement at 3:30; and it was completed a half hour later.

U.S. 443, 450–52 (1965); Fay v. Noia, 372 U.S. 391, 439 (1963); United States ex rel. Cruz v. LaVallee, 448 F.2d 671 (2 Cir. 1971), cert. denied, 406 U.S. 958 (1972); United States ex rel. Schaedel v. Follette, 447 F.2d 1297, 1298–1301 (2 Cir. 1971); United States ex rel. Bruno v. Herold, 408 F.2d 125, 128–29 (2 Cir. 1969), cert. denied, 397 U.S. 957 (1970). Furthermore, Judge Lumbard's careful and reasoned analysis of the rationale for the bypass rule earlier this term in *Cruz* simplifies our task here. We therefore shall limit ourselves to considering the application of that rule to the facts of the instant case.

Essentially, it was the deliberate and consistent strategy of Terry's counsel at his state murder trial not only not to question the voluntariness of his confession but to use it affirmatively to support Terry's testimony of lack of any premeditated intent to kill. This led to his acquittal on the charge of common law first degree murder, one element of which is premeditation.[9] He admitted that he killed Mrs. Clegg and that he went to her room with the intent of robbing her. He denied any premeditated intent to kill her and stressed that he had had too much to drink before he strangled her. In short, without ever claiming that his confession was not voluntary, his astute trial counsel stressed that, although it established that Terry had committed a crime (which the other evidence more than sufficiently established in any event), portions of the confession were exculpatory of the crime of premeditated first degree murder. On the basis of these portions of the confession, it was reasonable for counsel to hope that a verdict of second degree murder or manslaughter might be returned. Avoiding the electric chair appears to have been the primary concern of Terry and his counsel at trial. A good lawyer in a tough case, which this one surely was, cannot be faulted for adopting such strategy. Terry obviously had more to lose by objecting to the confession than by having it admitted in evidence. That is precisely what a bypass is all about. Here, paraphrasing *Cruz, supra,* 448 F.2d at 679, we hold:

"Thus, even assuming that [Terry's] confession was coerced, the record is eminently clear that the defense made a deliberate decision here to bypass all state procedures for challenging the voluntariness of that confession. In light of what we have said above, therefore, there is no need for an evidentiary hearing in the district court either on that issue or on the question whether there was a deliberate bypass here."

There remains to be considered Terry's contention that, since the issue of the voluntariness of his confession was raised by counsel *on direct appeal* from his judgment of conviction even though not raised at trial, he has preserved his right to a hearing in his federal habeas corpus proceeding. In support of this contention, Terry relies upon a dictum in our opinion in *Schaedel, supra,* 447 F.2d at 1299–1300.[10] We disagree with

9. In accordance with New York law, the court charged the jury on (1) first degree murder; (2) second degree murder; (3) manslaughter; (4) first degree assault; (5) second degree assault; and (6) felony murder. He was convicted of felony murder.

10. The portion of our *Schaedel* opinion relied upon is as follows:
    "On this record, we agree with the district court's conclusion that the application for habeas corpus must be denied because of the failure of appellant to object to the use of his allegedly involuntary oral admissions at the trial or to raise the issue on direct appeal. Where the federal habeas applicant 'has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies' the federal habeas judge may, in his discretion, deny relief. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Under New York law a contemporaneous objection is required to preserve the issue on appeal, but no objection is required to preserve for appellate review a deprivation of a fundamental constitutional right, and the failure to object does not waive the defendant's state remedies for the pres-

this contention and we believe that his reliance upon *Schaedel* is misplaced.

In the first place, the New York cases cited in *Schaedel, supra* note 10, for the proposition that no objection at trial is required to preserve for appellate review a deprivation of a fundamental constitutional right are not cases where an initial factual determination was necessary to get at the underlying constitutional issue. They deal instead with situations where the constitutional infirmity was evident on the face of the record—a much more satisfactory setting for an appellate court to intervene despite an absence of objection at trial. In People v. McLucas, *supra* note 10, the alleged constitutional error was the trial court's improper reference to the defendant's failure to testify, in violation of his Fifth Amendment privilege. In People v. Arthur, *supra* note 10, and People v. DeRenzzio, *supra* note 10, the alleged constitutional errors involved deprivation of the Sixth Amendment right to counsel. Thus, each case being concerned with errors determinable as a matter of law on the face of the record, appellate review was not precluded solely because of failure to make a formal contemporaneous objection.

■ Secondly, *Schaedel* is distinguishable from the instant case in this important respect: there, unlike here, the confession was not, and could not have been, used affirmatively in an ef-

fort to exculpate the defendant; there was merely a failure to object at trial on grounds of voluntariness.[11] Where, as here, a defendant at trial deliberately waives or bypasses an attack upon the voluntariness of a confession, *including* affirmative use of it in an effort to exculpate himself, he should not be permitted to change his position on appeal, absent a showing of new circumstances unknown to him at the time of trial. We so hold.

### III.

■ Terry further contends that his conviction of felony murder denied him due process because there was insufficient evidence to support the predicate felony of robbery, although there was sufficient evidence of attempted grand larceny. We hold this claim to be without merit. And despite the ingenious argument of petitioner's conscientious counsel in this Court, we do not believe that this claim warrants extended discussion here.

First, having held that Terry's confession was properly admitted in evidence, we believe there was more than sufficient evidence to support the predicate felony of robbery. Terry stated repeatedly, both in his oral confession to Detective LoCurto and in his written confession to Assistant District Attorney Fogerty, that he went to Mrs. Clegg's room with the intention of robbing her.[12]

---

ervation of those rights. People v. McLucas, 15 N.Y.2d 167, 256 N.Y.S.2d 799, 204 N.E.2d 846 (1965); People v. DeRenzzio, 19 N.Y.2d 45, 277 N.Y.S.2d 668, 224 N.E.2d 97 (1966); People v. Arthur, 22 N.Y.2d 325, 292 N.Y.S.2d 663, 239 N.E.2d 537 (1968)."

11. In *Cruz*, decided a month after *Schaedel*, we made it clear that failure to object at trial was not alone conclusive evidence of a deliberate bypass:

"Although failure to object to the admission of a confession is not conclusive evidence of a deliberate bypass, it is a factor to be considered; and here, as we have shown, it was conjoined with a consistent trial strategy not only not to challenge the admission of Cruz's confession in any way, but indeed openly

to concede the facts contained in that confession. As just demonstrated, the defense was to admit that Cruz had killed Theresa Gee, but to argue that there were mitigating circumstances." 448 F.2d at 678–679.

12. For example, Detective LoCurto testified that, ". . . then he told me then that the woman suggested that they go up to her room, and Terry stated then that he agreed because he felt that perhaps he could take her for some money up in her room and that's why he was going up in her room with her."

In his written confession to Assistant District Attorney Fogerty, Terry gave the following answers to questions put to him:

"Q. What was your intention when you went up to the room with her?

Despite the state's concession on direct appeal to the New York Court of Appeals on the insufficiency of the evidence of first degree robbery,[13] we believe that the trial record, including Terry's confession, adequately supports each essential element of the felony of robbery upon which the trial court correctly charged the jury without exception under former N.Y.Penal Law § 2120.

Second, assuming arguendo that there was insufficient evidence of first degree robbery, there surely was overwhelming evidence to support the predicate felony of attempted grand larceny. Former N.Y.Penal Law § 1290.[14] The record clearly establishes that Terry caused the death of Mrs. Clegg during the commission of a felony, whether the predicate felony was robbery, larceny or attempted larceny. The jury's verdict finding Terry guilty of felony murder under former N.Y.Penal Law § 1044 was supported by the record, was in accordance with the trial court's charge to which no exception was taken, and was unanimously affirmed by the New York Court of Appeals on direct appeal. *Supra* note 13.

■ Finally, the claim that the conviction of felony murder was not supported by sufficient evidence of a predicate felony is essentially a question of state law and does not rise to federal constitutional dimensions, United States ex rel. Griffin v. Martin, 409 F.2d 1300, 1302 (2 Cir. 1969); United States ex rel. Smith v. Reincke, 239 F.Supp. 887, 892–93 (D.Conn.), aff'd, 354 F.2d 418 (2 Cir. 1965), cert. denied, 384 U.S. 993 (1966); United States ex rel. Sadowy v. Fay, 284 F.2d 426, 427 (2 Cir. 1960), cert. denied, 365 U.S. 850 (1961), unless there was no proof whatever of the crime charged. Gregory v. City of Chicago, 394 U.S. 111, 112 (1969); Thompson v. City of Louisville, 362 U.S. 199 (1960); cf. United States v. Liguori, 438 F.2d 663, 669 (2 Cir. 1971). Here, any claim that there was no proof whatever of the crime charged, obviously would be frivolous.

Affirmed.

A. It certainly wasn't to kill her, anything like that.
Q. No, I understand that.
A. Well, if I can get hold of her purse and take off, get the money and take off."

13. In the context of arguing that "[t]he prosecution's theory was that the underlying felony was an attempt to commit the crime of grand larceny and the proof to support that thesis is abundant", the state's brief then stated:
"The evidence of a first degree robbery, however, may well be deemed insufficient. Nonetheless the jury returned a verdict of guilty. But this legal failure of proof does not require reversal because an attempted larceny is a lesser included degree of the robbery count charged . . . The jury was instructed on and did find a higher degree of underlying felony than necessary. . . ." Respondent's Brief at 25, People v. Terry, 16 N.Y.2d 731, 209 N.E.2d 727, 262 N.Y.S.2d 111 (1965) (conviction affirmed).
Aside from our holding below that petitioner's attack on the sufficiency of the evidence to support a state court conviction does not raise a federal constitutional question, we of course are not bound by a concession or stipulation of the parties—whether made for purposes of argument or otherwise—as to the content of a record which itself is before us. See United States v. Ross, 464 F.2d 376, 381 (2 Cir. 1972).

14. The trial court charged the jury, without exception, that robbery is a combination of the crimes of larceny and assault (petitioner having conceded in this Court that Terry's assault was the cause of Mrs. Clegg's death):
"Stripped of all legal verbiage it is simply this: If anyone tries to take your property by the use of force, that is robbery. Robbery is a combination of the crimes of larceny and assault. Assault, basically, is the unlawful use of force or violence against the person of another; and larceny is the taking of personal property from the person or possession of another, with the intent to deprive or defraud that person of its use and benefit, or to appropriate the same to his own use, or to the use of somebody other than the true owner."