THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
LAWRENCE RAYMOND ALBRO, JR., Appellant.

Third Department, February 28, 1980

### APPEARANCES OF COUNSEL

*Robert L. Miller* for appellant.

*Stewart E. McDivitt, District Attorney,* for respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

Following an unsuccessful attempt to suppress his written confession, defendant was convicted after a jury trial at which the confession was admitted into evidence. The confession related defendant's participation in the events of June 5, 1976, during which defendant's stepmother was fatally shot and her companion seriously injured. Defendant urges several reasons why his confession should have been suppressed and found inadmissible at trial, only one of which has merit and requires discussion.

Five State troopers confronted defendant at his apartment at 5:00 A.M. on June 6, 1976. While at the apartment, one of the troopers found a plastic bag containing marihuana in plain view. Defendant was subsequently taken to various State Police substations where he was interrogated concerning the prior night's shooting for approximately 18 hours. Although defendant gave two exculpatory statements during this period, the investigators indicated they felt he was lying, and defendant was ultimately arrested for possession of the previously discovered marihuana at 11:00 P.M. on June 6. He was then taken to the Cortland City Police Station where he was arraigned before a Judge who set bail at $5,000.

Defendant was rearraigned the following day at 9:00 A.M., and at 4:00 P.M. he again appeared before the Judge who this time released him on his own recognizance. Trooper Allen had taken defendant to see the Judge the third time. Upon being released, defendant accompanied Allen to the State Police substation in Cortland. After being advised of his rights, defendant confessed to the murder and assault at 5:30 P.M.

An understanding of the recent Court of Appeals decision in *People v Rogers* (48 NY2d 167) is essential for resolution of this appeal. In *Rogers,* the court held that once an attorney has entered the proceeding, a defendant in custody may not be further interrogated in the absence of counsel, and any information obtained through questioning in the absence of counsel cannot be used against that defendant. Departing from earlier cases which permitted questioning in the absence of counsel about a charge unrelated to that on·which the defendant was represented *(People v Hetherington,* 27 NY2d 242; *People v Taylor,* 27 NY2d 327; see *People v Hobson,* 39 NY2d 479, 483), the *Rogers* court stated that "[w]e may not blithely override the importance of the attorney's entry by permitting interrogation of an accused with respect to matters which some may perceive to be unrelated" (48 NY2d 167, 169).

Before deciding if the facts in this case fit within the *Rogers* rule, we turn first to the issue of whether the *Rogers* rule is even applicable since *Rogers* was not decided until after defendant's conviction. The easy to apply common-law rule that cases on direct appeal received the benefit or detriment of changes in decisional law and that final judgments were not affected by subsequent changes is no longer valid (see *People v Morales,* 37 NY2d 262, 267-269). Instead, the United States Supreme Court has instructed that each constitutional rule of criminal procedure must be individually analyzed to determine if it will be given retroactive application *(Johnson v New Jersey,* 384 US 719, 728).

Three factors must be considered in determining whether a rule will be applied retroactively: (1) the purpose to be served by the new standards; (2) the extent of the reliance by law enforcement authorities on the old standards; and (3) the effect on the administration of justice of a retroactive application of the new standards *(Desist v United States,* 394 US 244, 249; *Stovall v Denno,* 388 US 293, 297; *People v Morales, supra,* p 269). The most important of these factors is the purpose to be served by the new constitutional rule *(Desist v United States, supra),* and retroactivity is not precluded by the mere fact that law enforcement authorities acted in reliance on prior decisional law, as was done in this case *(Roberts v Russell,* 392 US 293, 295; *Witherspoon v Illinois,* 391 US 510, 523, n 22).

We believe that the *Rogers* rule *(supra)* should be given retroactive effect. The rule was fashioned to guard an individ-

ual's privilege against self incrimination and right to counsel. "[R]ight to counsel decisions are among those which have most commonly been deemed retroactive" *(People v Morales, supra,* p 270). This is so because denial of that right must almost invariably deny a fair trial *(Arsenault v Massachusetts,* 393 US 5, 6). Thus, in spite of the countervailing considerations presented by this case—reliance on the old rule of *People v Taylor* (27 NY2d 327, *supra)* and the potential impact of retroactivity upon the administration of justice, we hold that *People v Rogers (supra)* be given retroactive effect. (See *People v Holcombe* 74 AD2d 700; *People v Hardy,* 73 AD2d 830.)

Having decided that the *Rogers* rule applies to this case, we return to the question of whether the factual pattern presented fits within the rule. The *Rogers* rule is activated only in those situations where a defendant is in custody and his attorney has entered the proceeding. It is clear that defendant's attorney had entered the proceeding prior to the questioning which ultimately elicited defendant's confession. Defendant was represented on the drug charge at the 9:00 A.M. arraignment on June 7, 1976 by an attorney who indicated his willingness to be replaced by assigned counsel due to his own unfamiliarity with criminal matters and defendant's inability to pay for private counsel. Following these remarks by his attorney, defendant requested assigned counsel which was never provided.

More troubling, however, is the issue of whether defendant remained in custody throughout the period of June 6—June 7, or whether there was a meaningful interruption of custody when he was released on his own recognizance and he then voluntarily accompanied Trooper Allen to the Cortland substation for further questioning. A review of defendant's *Huntley* hearing and the order denying the motion to suppress discloses that this question remains unresolved. Defendant testified that he was in handcuffs when taken by Trooper Allen to see the Judge and that he remained shackled while he was taken to the State Police substation in Cortland. Allen disputed this and testified that defendant voluntarily agreed to accompany him. In denying defendant's motion to suppress his confession, the trial court made no finding as to custody since it found that *Miranda* warnings had been given prior to the statement. Since the court was acting prior to the decision in *People v Rogers (supra),* it was not concerned with the

question of whether custody had been interrupted. However, since that issue is now critical to resolution of this appeal and the record contains conflicting testimony concerning the circumstances surrounding defendant's release on June 7, 1976, the matter should be remitted and a hearing held on the issue of custody.

The decision should be withheld, and the matter remitted to the County Court of Schuyler County for further proceedings not inconsistent herewith.

MIKOLL, J. (dissenting). I respectfully dissent.

This case was submitted to the jury by the defendant on the sole issue of whether defendant was guilty not of murder in the second degree but only of manslaughter in the first degree because he was acting under extreme emotional disturbance. Defendant conceded to the jury his guilt of manslaughter in the first degree and of assault. In my view the judgment of conviction should be affirmed. The defendant here took the stand in his own defense and testified. He confessed in open court before the jury. He described the crimes committed fully, in as much, if not more, detail than contained in the written confession. Defendant made affirmative use of the very evidence he earlier claimed was inadmissible. In so doing he effectively waived any error in its admission in the trial and did not preserve the alleged error for appellate review *(People v Di Piazza,* 24 NY2d 342, 352; *People v De Renzzio,* 19 NY2d 45; *People v Rutigliano,* 261 NY 103; *Hayden v Palmer,* 2 Hill 205, 209-210; *Gale v Shillock,* 4 Dak 182, 196; *People v Workman,* 283 App Div 1066, 1067, affd 308 NY 668; Paperno and Goldstein, Criminal Procedure in New York [rev ed], part II, § 46, p 101; 1 Wigmore, Evidence [3d ed], § 18, pp 344-345). While it is true that where constitutional error is involved, as here, it has been held that the defendant must do more than merely waive his earlier objection to the admission of evidence *(People v Arthur,* 22 NY2d 325, 329; *United States ex rel. Cruz v La Vallee,* 448 F2d 671), the defendant has done just that here. Although defendant originally objected to the admission of the confession into evidence, later, during his own case, he departed from that course. He testified to the very same evidence in support of his obvious objective to convince the jury that his emotional state at the time of the event was such as to prevent his conviction of murder in the second degree. Indeed, he also adopted the confession as his own in his psychiatric testimony toward that end.

This trial strategy objective is made ever so clear in the summation of defense counsel when he told the jury: "There is no question from the defendant's standpoint he was involved, was present and participated in the shooting of Anita Albro. I think the only significant question, which in no way exonerated him, was who fired the shots that hit her. I don't think there is any question from the proof or any question from the defendant's testimony at least one of the shots he fired struck the deceased. I don't think there is any question and there is no argument being advanced that you should find him not guilty or exonerate him in the homicide of Anita Albro. I think at best the only clearly delineated issue is the question of the mental state of the defendant himself."

At another point defense counsel stated: "There is no question of guilt. We are not asking you to consider exonerating this defendant."

And finally defendant's counsel pleaded: "It's not a crime to be exonerated. It's a crime you must in your conscious [sic] decide in the exercise of mercy whether or not this was murder or manslaughter. Whether or not in the situation of the defendant as he himself saw it you will exercise [sic] and allow the reduction of this charge to manslaughter. At this time ladies and gentlemen, the District Attorney will have an opportunity to make his summary."

There is a well-established principle in our law, pertinent here, that an appellate court will not permit a defendant, who affirmatively utilized and sought to benefit from error he placed before the jury, to thereafter on appeal claim the benefit of that error (*Johnson v United States*, 318 US 189, 199-201; *People v Thompson*, 41 NY 1, 6-7). We should not ignore this principle on the facts in this record. Moreover, the defendant had a perfect right under our adversary system to adopt a trial strategy which he deemed most beneficial to the interests of his client at the time (*People v De Renzzio, supra*; see *People v Davis*, 43 NY2d 17, 28-29). In the *De Renzzio* case the Court of Appeals stated (19 NY2d 45, 50-51):

"The Constitution in guaranteeing the accused in a criminal case the 'Assistance of Counsel for his defence' deals neither with a shadowy figure standing beside the accused nor with an abstract idea. It envisages a lawyer, skilled in advocacy, a match for the prosecutor, and in full control of the management of the defense at the trial.

"If such a lawyer chooses not to raise a point of constitutional law in a professionally competent defense, either because he believes he could use material affirmatively to advantage or because he believes it better for his client not to raise it, we would work fundamental changes in the adversary system if we determine he should have done that which he had decided advisedly not to do."

The waiver of alleged error because of the affirmative use of erroneous evidence for purposes of trial strategy and trial tactics is a doctrine inherent in the adversary system and in our system of appellate review. In my view it is a separate and distinct doctrine which does not depend upon an analysis of harmless error for its application. It is the same type of waiver one exercises when he chooses to take the stand in his own defense and thereby gives up his constitutional right not to be a witness against himself.

The case at bar is also distinguishable from the Court of Appeals holding in *People v Grant* (45 NY2d 366) where the defendant's conviction was based upon a plea of guilty and not a jury verdict after trial. The court there expressly noted that defendant did not waive his right to appeal and have the confession suppressed at the time he entered his plea *(People v Grant, supra,* p 379). Without the waiver, the court attempted to apply the harmless error doctrine to excuse the error that occurred in the suppression ruling. The instant situation is different in that a waiver occurred through the employment of a trial strategy in the affirmative use of the inadmissible evidence. It is not clear under the *Grant* holding that the harmless error doctrine is necessarily applicable to the instant case.

It is also noteworthy that defendant Albro was represented by capable counsel during the course of the trial when the trial strategy decision was made. Thus, *People v Felder* (47 NY2d 287), which held that the harmless error doctrine was not applicable in a situation where defendant's trial representation was by an unlicensed person because it denied defendant of his fundamental right to a fair trial, does not apply to the case at bar.

Nevertheless, even if it were necessary to apply the constitutional harmless error doctrine to this case *(People v Crimmins,* 36 NY2d 230, 237-241), it appears from my view that the test is met here. The proof of guilt, independent of the written confession offered by the People, was overwhelming.

Nor can it be said that the written confession offered by the People contributed to the verdict after the jury heard the full confession from the defendant's own lips and after the written confession was, in effect, adopted by the defense as its own. Further, defendant failed to point to any significant errors in the confession or to deny its contents in any material way. Thus, in fact, the confession legitimately remained before the jury since the defendant also placed it there. Its original significance was blunted and subsumed by the later actions of the defense.

In my view it is unnecessary to review the merits of defendant's contentions which all relate to the admissibility of the confession and admissions of defendant at trial. This issue, as I previously indicated, was not preserved for review by this court. However, I also disagree with the majority's conclusion that it is necessary to remand this case for an evidentiary hearing. The evidence indicates that defendant was at least in such custodial surroundings as to be "in custody" for purposes of invoking his *Miranda* rights at the time the police obtained the confession from him. Therefore, if I were to reach the merits under the holding of *People v Rogers* (48 NY2d 167), I would conclude that its ruling would apply. The judgment should be affirmed.

GREENBLOTT, SWEENEY and STALEY, JR., JJ., concur with MAHONEY, P. J.; MIKOLL, J., dissents and votes to affirm in an *opinion.*

Decision withheld, and matter remitted to the County Court of Schuyler County for further proceedings not inconsistent herewith.