THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
LAWRENCE RAYMOND ALBRO, JR., Appellant.

Third Department, July 24, 1980

APPEARANCES OF COUNSEL

*Robert L. Miller* for appellant.

*Stewart E. McDivitt, District Attorney (Steven Foyer* of counsel), for respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

When this appeal was before us on a prior occasion, we withheld decision and remitted the matter to the County Court of Schuyler County for a hearing on the issue of whether there was a "meaningful interruption" of defendant's custody on June 7, 1976 *(People v Albro,* 73 AD2d 73). Our concern was whether this case was controlled by the decision of *People v Rogers* (48 NY2d 167), wherein the Court of Appeals held that, once an attorney has entered the proceeding, a defendant in custody may not be interrogated in the absence of counsel on any charge, even those on which he is unrepresented. We previously concluded that defendant's attorney had entered the proceeding, but felt the record was inadequate for resolution of the custody issue.* Now that a

---

* The dissent now concludes that defendant was never represented by counsel. In view of our previous decision, wherein we specifically stated that "[i]t is clear that defendant's attorney had entered the proceeding prior to the questioning which ultimately elicited defendant's confession" (73 AD2d 73, 76), our present consideration of this case should be limited to those matters previously unresolved.

However, even if the issue of whether defendant's counsel had entered the proceeding was properly before us, we would still decide that he was represented by counsel prior to the time of his confession. Although the record developed by the County Court upon remittal now indicates that attorney Ryan never represented defendant on the drug charge, the testimony of Judge PURSER, before whom defendant was arraigned, clearly indicates that the Public Defender was assigned to represent defendant:

"Q. There is no question the Public Defender was assigned to represent this individual [defendant] prior to his being released on his own recognizance?

"A. According to that docket sheet that is correct. * * *

"Q. It's not a simple matter of requesting assignment of counsel. In fact assignment was made and you so informed the defendant?

"A. Correct.

"Q. You are now represented by the Public Defender?

"A. Yes.

"Q. You have counsel in effect. Is that right?

"A. Yes."

Furthermore, even if the dissent was correct in concluding that defendant was unrepresented by counsel, it is undisputed that he asked for an attorney when arraigned on the drug charge and any further questioning in the absence of counsel would be illegal *(People v Cunningham,* 49 NY2d 203).

hearing on that subject has been conducted, a review of the entire record compels the conclusion that there was not a "meaningful interruption" of defendant's custody. Since law enforcement officials are prohibited by *Rogers* from interrogating a defendant represented by counsel on any charge while he is in custody, we will not allow the protection afforded by that case to be circumvented by a practice of securing the release of a prisoner represented on one charge in order to question him on another charge. Technical, momentary gaps in a defendant's custodial status should be ignored and the focus of appellate inquiry directed to a determination of whether the defendant was released to pursue his own desires or as a pretext for further interrogation.

Defendant Albro had been arraigned on a drug charge and was unable to post bail when State Trooper Allen called the City Court Judge on June 7, 1976 and asked that defendant be released on his own recognizance. Trooper Allen's testimony reveals that the purpose behind securing defendant's release was to enable the police to question him about the fatal shooting of his stepmother:

"Q. And did you understand your assignment to be or the purpose of your assignment to be the securing this defendant out of the Cortland County Jail and back to the State Police Barracks for the purpose of further questioning him? Did you understand that would be the purpose of your assignment?

"A. Absolutely.

"Q. You weren't there to let him be released on his own recognizance on a humanitarian gesture on June 7?

"A. Absolutely not. We wanted to talk to Mr. Albro."

It was Trooper Allen who told defendant that he was going to be released from jail. Before bringing defendant to see the City Court Judge, Trooper Allen informed him that he had been implicated in the homicide by other participants. Defendant was handcuffed while he was escorted by Troopers Allen and Manning to see the Judge. Upon his release, defendant and the officers left the Judge's chambers together and Trooper Allen again told the defendant of his implication in the homicide by other participants. It was at this time that defendant complied with a request by the officers to accompany them to the State Police substation in Cortland for questioning regarding his stepmother's death. The person who led the questioning of defendant at the police substation,

Officer Dickey, testified that defendant was not free to leave the substation while he was there.

It is thus clear that the police did not regard defendant's custody as having been terminated by his June 7 release on the drug charge and that the release was procured to facilitate further interrogation. Moreover, given these circumstances, a reasonable man innocent of any crime would have perceived himself to have been in custody throughout the entire time period being considered (see *People v Yukl,* 25 NY2d 585, 589, cert den 400 US 851). Therefore, the confession which defendant ultimately gave after being questioned at the Cortland substation should have been suppressed since it was obtained in violation of his right to counsel as guaranteed by our State Constitution *(People v Rogers,* 48 NY2d 167, 169, *supra).* Since we cannot say that there is "no reasonable possibility that the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt" *(People v Crimmins,* 36 NY2d 230, 237), the judgment of conviction must, accordingly, be reversed and a new trial ordered.

The judgment should be reversed, on the law, and a new trial ordered.

GREENBLOTT, J. (dissenting). In my view, the testimony elicited at the hearing conducted pursuant to our remittal establishes that defendant was neither in custody at the time he confessed to the brutal murder of his stepmother, nor was he represented by an attorney. Accordingly, *People v Rogers* (48 NY2d 167) is inapplicable and defendant's confession was properly admitted into evidence.

EDWARD PURSER, the Acting City Court Judge, testified that on June 6, 1976 defendant was arraigned before him on a drug charge. PURSER set bail at $5,000. The following afternoon, defendant was brought to the office of Judge PURSER who testified under oath at the hearing that he released the defendant in his own recognizance.

Although defendant was given a document explaining the procedure to follow in contacting the Public Defender's office, defendant conceded that he never called that office. Additionally, John Ryan, an attorney, unequivocally testified that he did not at any time represent defendant on the drug charge and that he had so advised defendant. Gary Allen, a State Police investigator who was with defendant at the times in

issue, testified that defendant never requested an attorney and that defendant never told him that he had an attorney. Likewise, Sergeant Dickey of the State Police testified that while being questioned on the homicide, defendant never requested an attorney and never indicated that he had one. Finally, when cross-examined at the. *Huntley* hearing as to why he signed a statement which stated that he did not want an attorney, defendant replied that "I figured I wasn't going to need a lawyer". Contrary to the statement in our previous decision, therefore, it is now clear that attorney Ryan had come to the arraignment for the sole purpose of advising defendant that he would not represent him on any charge.

Next, I conclude that *Rogers,* which requires suppression of statements given only by "a defendant in custody" (48 NY2d 167, 169), is also inapplicable for the reason that defendant was not in custody at the time he confessed. It is undisputed that Judge PURSER released defendant on his own recognizance, which obviously constituted a meaningful interruption of custody. The mere fact that the State Police, in the proper exercise of their responsibilities, desired to talk to defendant on the homicide charge, does not compel the conclusion that defendant remained in custody. After defendant was released on his own recognizance, defendant was asked if he would accompany the State Police to the State Police station. Investigator Allen testified that the defendant said "sure" and that defendant was "co-operative". Moreover, Allen testified that defendant was "free to come and go" and that he, Allen, did not consider that defendant was in custody. It, therefore, seems clear to me that following release on his own recognizance, defendant voluntarily went to the State Police station. Finally, since defendant was not in custody, the principles recently set forth in *People v Samuels* (49 NY2d 218) and *People v Cunningham* (49 NY2d 203) are inapplicable. For the above reasons, and since defendant waived his *Miranda* rights after being properly advised of them prior to his interrogation on the homicide charge, his confession was properly admitted into evidence.

I, therefore, respectfully dissent.

MIKOLL, J. (dissenting). I adhere to my dissent when the case was previously before us. I, therefore, vote to affirm.

SWEENEY and STALEY, JR., JJ., concur with MAHONEY, P. J.;

GREENBLOTT and MIKOLL, JJ., dissent and vote to affirm in separate opinions.

Judgment reversed, on the law, and a new trial ordered.